demand, and that therefore neither the mode of trial nor the right of appeal was affected by the answer.

The case made in the petition was not appealable, and was not made so by the filing of the answer, and therefore the motion to dismiss the appeal must be granted.

*Appeal dismissed.*

FUNK, P. J., and PARDEE, J., concur.

BOURDELIS ET AL. v. TRINITY CATHEDRAL.

(Decided January 21, 1929.)

*Messrs. White, Hammond, Brewer & Curtiss,* for plaintiffs in error.

*Messrs. Squire, Sanders & Dempsey,* for defendant in error.

SULLIVAN, P. J.   In the court below, Trinity Cathedral, a religious corporation, began a suit for the possession, in the form of a forcible entry and detention proceeding, of land and certain buildings adjacent to its church property, and rested its right to recover in a fee-simple title acquired by purchase from the owner, Morris H. Glauber, July 17, 1928, who was the beneficial owner and the manager of the property, the title being in the National City Bank, as trustee.   The statutory requirements as to the instrument of writing conveying the property were followed, and it is an ultimate fact that since the date noted Trinity Cathedral has held the legal title to the property in question.

The defense made is that plaintiffs in error hold under authority from the owner, by way of a lease of the premises, and it is uncertain from the record whether the claim is for a lease of one year or three years from January 27, 1927.   We will consider both phases.

If the right to the premises depends upon the one-year lease, then it follows that the terms of this lease have practically expired, and, in effect, there is nothing but a moot question before the court. However, if the claim that the lease is for three years is correct, then the question arises, Is it in writing? It is conceded that it is not, unless such an interpretation arises from the following clause in the lease:

"It is hereby further agreed that the within lease is transferred and assigned to the said Emanuel Saridakis and Louis Bourdelis and that the said M. H. Glauber is agreeable to and does extend the date of this lease for an additional one year from the expiration of the two years of this lease."

From an examination of this clause, it is clear that the language itself is too indefinite, for the additional words do not extend the terms of the lease, but the date of the lease, and only for an additional one year from the expiration of the two years of the lease. From this language, under the record in the case, one could not definitely conclude that it was a one-year lease or a three-year lease. The language, "from the expiration of the two years of this lease," is too indefinite upon which to base a conclusion for a definite term, but whether we are or are not correct in the discussion of this phase of the case, it appears from the record that a four-year lease had expired on these same premises, and that, on a remnant of the written lease so expired, the language above noted was inscribed by one who assumed to be the agent of the owner, acting for both the lessor and the lessee.

From an examination of the record we find that

the attorney who acted as scrivener denies that he had any authority from the owner to do what the writing in question imports, and the owner of the premises specifically disclaims the execution of any such authority by any verbal or written language, and there is no evidence of a subsequent nature, which is binding in law, appearing in the record that there was any ratification of the act, even though rent for the premises had been accepted month by month.

It is well settled authority in Ohio that the mere acceptance of rent is not an acknowledgment of the terms of the lease, nor a waiver of any rights thereunder. If the so-called agent admitted his authority to execute the writing above noted, it would be necessary to prove the same by an agency independent of his own testimony, because an agent cannot construct his own agency upon his own testimony, in the absence of any ratification by the owner; and, especially in the face of a positive denial of authority, it must necessarily follow that the writing itself is without any legal effect. There is only one way to impregnate the writing with life, and that would be evidence of a competent nature to establish agency under the rules of law, and conceding for the purposes of discussion that agency is proven under the record, under the scintilla rule it is obvious that the writing in question, purporting to extend the terms of the lease, has no legal effect, for the reason that there is an attempt to connect it with the lease which had expired in 1926, and which was of no force and effect, and when it further appears that a portion of this document has disappeared, and that only a remnant thereof remains, it inevitably follows that

the writing is not susceptible of any legal significance, because only a portion of the terms of the lease to which reference is made appears in the remaining portion of the partially destroyed or lost lease.

It is argued that there is a scintilla of evidence which ought to have gone to the jury, and that this must be considered as a ground of error, inasmuch as the court sustained a motion at the conclusion of all the evidence directing the jury to return a verdict finding the defendants guilty. This particular portion of the evidence relates to the examination of the so-called agent, who, upon testifying to the effect that he had no authority from the owner to execute the writing, admits upon further examination that, if he had testified in a former hearing to the contrary, what he then said was true.

It further appears, however, that what he said at a former trial was not offered in evidence in any manner, and therefore there is no evidence in the record that contradicts the denial of authority excepting the subjunctive statement above noted, which, unsupported by the actual testimony at the previous hearing, is of no avail, because from the witness himself the admission is only conditional, and could only be verified by inserting in the record the actual testimony at the former trial. Therefore, in our judgment, inasmuch as it is necessary in order to have a scintilla of evidence that it must be substantive in its nature, it is our view that the scintilla rule does not apply.

It is further stated that the only inference from the writing in question attempting to extend the lease, especially considered in connection with the

occupancy of the premises, is that the agent had authority to act for the owner. This, it appears to us, would be building an inference upon an inference, which, under the authority of the Supreme Court of Ohio, in the well-known *Sobolovitz case,* 107 Ohio St., 204, 140 N. E., 634, is contrary to the rule of law.

Trinity Cathedral, by virtue of the fee-simple title, was supreme in ownership and control of the premises in question, unless there was a lease of some character which at the time of purchase was in effect, and in our judgment, from a searching examination of the record, there is no evidence of a substantive nature to support the contention of plaintiffs in error as to the existence of an authoritative lease.

Counsel for plaintiffs in error have argued ably and exhaustively, and we have examined the record for the purpose of finding even circumstantial proof of a substantive nature, but our efforts are unavailing, and we find in our search for substantive proof of the existence of any lease whatsoever that we are wandering in the field of speculation and of inference founded upon inference, conditions upon which the law frowns.

It is apparent that plaintiffs in error acted in good faith, and that, in depending upon an extension of the terms of a so-called lease, or the authority to make terms for the lessor or lessee, they leaned upon a broken reed, and all without any fault upon their part so far as the record discloses, for it is impossible to bind the owner to the terms of a lease wherein he gave no authority, and more especially, where it appears from the testimony of

the so-called agent that he is at a loss to account for the supplemental terms of the unexpired lease.

Bearing upon what appears in the record to the effect that the so-called lessees made no examination as to the pretended authority of the agent, we cite *Lithograph Building Co.* v. *Watt,* 96 Ohio St., 74, 117 N. E., 25, which we think has a strong application to the facts in the case at bar. This authority also bears upon the questions of ratification and estoppel, which are only considered by taking the view, for discussion only, that there is some evidence in the record of a substantive nature relating to ratification, acquiescence, or estoppel. From pages 85, 86, 87 and 88 (117 N. E., 28, 29) we quote as follows:

"The principle is well established that persons accepting a lease of real property executed by the agent of the owner are bound to ascertain whether he has authority to execute such a lease. The knowledge of the agent that he has overstepped the bounds of his authority cannot be imputed to the principal. * * *

"This brings us to the question of ratification. * * * None of said leases was recorded, and it appears from the record that neither the plaintiff in error nor any of its officers had any knowledge of the fact of the execution of such leases, nor of the terms they contained, until the agency * * * was terminated * * * when all of the leases were turned over to the plaintiff in error; and it further appears * * * neither the plaintiff in error nor any of its officers had any knowledge that there was any claim or contention of the defendant in error that his lease did not contain the terms agreed upon by himself and The Guardian Savings

& Trust Company, at which time that claim was first asserted by the defendant in error in response to a notice to vacate at the expiration of a year in accordance with the terms of the lease as written." Page 85 (117 N. E., 28).

"It is contended by the defendant in error that the acceptance of rent by plaintiff in error constituted a ratification of the act of its agent in executing such lease and binds plaintiff in error as fully and completely as though the agent had been fully authorized in the premises. The proposition is well established that before the principal can be held to ratify the unauthorized acts of his agent *it must appear that he had knowledge of all material facts.*" Page 86 (117 N. E., 29).

"Of course, a principal may, by his acts or declarations, lay the basis for an estoppel as to the due authority of the assumed agent. But, in a case like this, to make the assent and acquiescence of the principal, and the acts of the lessees in reliance thereon, operate as an estoppel as to the authority of the assumed agent to execute the lease, it is essential that she should have known what sort of lease the agent had assumed to execute in her name." Page 87 (117 N. E., 29), quoting from *Judd* v. *Arnold*, 31 Minn., 430, 18 N. W., 151.

"A further claim of ratification of this lease is based upon the action taken by the plaintiff in error in instituting the original proceeding seeking to eject the defendant in error from its building. * * * It is quite apparent from the record that the action of the plaintiff in error, including the institution of the proceeding referred to, has been entirely consistent with a ratification and acceptance

of the lease as written and as it came to its attention, and it does not appear from the record that the plaintiff in error has at any time assumed an attitude inconsistent with repudiation of a lease other than the written lease presented to it, which, as we have seen, is substantially a lease only from year to year.'' Page 88 (117 N. E., 29).

Holding these views, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

Vickery and Levine, JJ., concur.