COMMONWEALTH *vs.* DONALD K. GRIFFIN.

Middlesex.     April 23, 1979. — August 20, 1979.

Present: KEVILLE, GOODMAN, & GREANEY, JJ.

*Homicide. Wanton or Reckless Conduct. Evidence*, Death certificate, Expert opinion. *Practice, Criminal*, Argument by prosecutor.

At the trial of a defendant charged with involuntary manslaughter, there was sufficient evidence to support an inference that the defendant, without intending to kill the victim, intentionally pointed a gun at the victim's head and pulled the trigger. [278-279]

At the trial of a defendant charged with involuntary manslaughter, the judge did not err in excluding the word "Accident" from an autopsy report. [279-280]

At a criminal trial, there was sufficient evidence to permit the Commonwealth's ballistics expert to answer a hypothetical question put to him by the prosecutor. [280-281]

The prosecutor at a criminal trial did not exceed permissible bounds in his closing argument. [281-283]

INDICTMENT found and returned in the Superior Court on February 10, 1975.

The case was tried before *Beaudreau, J.*

*David Berman (John F. Zamparelli* with him) for the defendant.

*Robert M. Raciti*, Assistant District Attorney, for the Commonwealth.

KEVILLE, J. The defendant appeals pursuant to G. L. c. 278, §§ 33A-33G, from his conviction of involuntary manslaughter after a trial by jury. He assigns as error the denial of his motion for a directed verdict, the exclusion of the word "Accident" from an autopsy report, the admission in evidence of an expert's answer to a hypothetical question, and the trial judge's failure to strike allegedly improper arguments of the prosecutor.

The defendant was the proprietor of a retail store in which, with other merchandise, he displayed and sold firearms. While in the retail part of the store, he invariably carried on his person a .38 caliber revolver in a hip holster. In the evening of September 20, 1974, he and the victim, Ronald Pursley, who was a friend and a customer, were discussing firearms. The victim was seated in a chair in front of a glass show case. The defendant was behind the counter. The defendant went to the rear of the store to look for the victim's bill and then returned to the retail area. Eight or ten seconds later a shot was heard. Three to five seconds thereafter the victim fell from the chair onto the floor with blood coming from a head wound caused by a bullet discharged from the defendant's revolver. An employee of the defendant heard him exclaim, "I am sorry Ron; it was an accident."[1] The defendant was seen standing behind the show case, the revolver held in his right hand while he removed cartridges from the weapon.[2]

Testimony of pathologists called by the Commonwealth revealed that the bullet which killed the victim entered his head near the left ear, traveled in a downward trajectory and lodged in muscle tissue in the right side of his neck.

When the police arrived, the defendant told them that he had removed the weapon from the holster and placed it on the corner of a filing cabinet, and as he was removing a brochure for the victim from the cabinet, the weapon fell on the floor and discharged. An examination of the floor and the cabinet showed no evidence of marks on the side of the cabinet or any sign on the floor that the weap-

---

[1] A customer recalled that the defendant said either, "Oh, my God, Ron, you have been shot," or, "My God, Ron, I have shot you." Later that evening the defendant related to the local police chief that he had said, "Oh my God, I didn't mean to do it."

[2] He later denied having removed cartridges from the weapon at any time following the shot.

on had fallen there and discharged. When the police examined the weapon at the scene, it contained five cartridges, one expended, one live with a hollow-point projectile, and three blanks. The expended cartridge bore a firing pin impression.

The Commonwealth's ballistics expert tested the weapon and found no sign that it malfunctioned in firing or in its safety features. It was his opinion that in order to impress the firing pin and cause discharge there must be sustained pressure on the trigger, even if the hammer is cocked,[3] and that the weapon would not have discharged had it simply dropped from the cabinet onto the floor.

1. The defendant challenges the judge's denial of his motion for a directed verdict on the indictment for involuntary manslaughter made at the close of the Commonwealth's evidence. See *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976). One is guilty of involuntary manslaughter if he engages in wanton or reckless conduct which causes the death of another. *Commonwealth* v. *Welansky,* 316 Mass. 383, 401 (1944). *Commonwealth* v. *Bouvier,* 316 Mass. 489, 495 (1944). "Wanton or reckless conduct amounts to what has been variously described as indifference to or disregard of probable consequences to [another]." *Commonwealth* v. *Welansky, supra* at 399. *Commonwealth* v. *Atencio,* 345 Mass. 627, 629 (1963). "[A] person who handles a dangerous weapon in such a manner as to make the killing or physical injury of another a natural and probable result of such conduct can be found guilty of involuntary manslaughter, although he did not contemplate such a result." *Commonwealth* v. *Bouvier, supra* at 494. Conduct sufficient to establish guilt for the crime of involuntary manslaughter includes pointing a gun known to be loaded at the victim's head. See *Commonwealth* v. *Wallace,* 346 Mass. 9, 12-13 (1963); *Commonwealth* v. *McCauley,* 355 Mass. 554, 561 (1969).

---

[3] The defendant told the police that he didn't think that he had cocked the weapon before he placed it on the filing cabinet.

In reviewing the judge's refusal to direct a verdict of not guilty, we determine whether the evidence, viewed in a light most favorable to the Commonwealth, is such that the jury might properly draw inferences not too remote or forbidden by any rule of law and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt. *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 786 (1975). *Commonwealth* v. *Johnson*, 7 Mass. App. Ct. 191, 193 (1979). Inferences need only be reasonable. *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977).

The Commonwealth presented evidence from which the jury could have found the defendant guilty of involuntary manslaughter beyond a reasonable doubt. They could reasonably have inferred that the defendant, without intending to kill the victim, intentionally pointed his weapon at the victim's head and pulled the trigger. Evidence supporting this inference included expert testimony indicating that the fatal bullet traveled in a downward path, and that the weapon was fired by pulling the trigger and could not have discharged as a result of falling to the floor. There was testimony by a customer in the defendant's store that he saw the defendant holding the weapon in his right hand and unloading it three to five seconds after the shot was fired, and testimony by the police that the weapon contained a mix of live and blank ammunition from which the jury could have inferred that the defendant intended to scare the victim (cf. *Sigler* v. *Ralph*, 417 S.W.2d 239, 242 [Ct. App. Ky. 1967]), or to play a foolhardy game (cf. *Commonwealth* v. *Atencio, supra* at 629); and there were the defendant's statements made immediately following the incident and his rather incredible accounts of what had taken place. Compare *Commonwealth* v. *Wallace, supra.* Contrast *Commonwealth* v. *Bouvier, supra* at 495-496.

2. The defendant asserts error in the judge's exclusion of the word "Accident" from an autopsy report offered by

the defendant and admitted in evidence.[4] There was no error. *Jewett* v. *Boston Elev. Ry.*, 219 Mass. 528, 530, 532 (1914). See *Krantz* v. *John Hancock Mut. Life Ins. Co.*, 335 Mass. 703, 710 (1957); 1957 Ann. Survey Mass. Law 232, 234. See, regarding the exclusion of similar language from death certificates admitted into evidence pursuant to G. L. c. 46, § 19, *Commonwealth* v. *Ellis*, 373 Mass. 1, 8 (1977) ("The better and safer course is to exclude from a death certificate the words 'homicide,' 'suicide,' or 'accident' in a criminal trial"); *Commonwealth* v. *Lannon*, 364 Mass. 480, 482-484 (1974). See generally, regarding the admissibility of the contents of public records, *Commonwealth* v. *Slavski*, 245 Mass. 405, 415-417 (1923); Hughes, Evidence §§ 611-613 (1961). The defendant's contention that the doctrine of verbal completeness overrides the policy behind exclusion of the word "Accident" is without merit. See *Schaeffer* v. *General Motors Corp.*, 372 Mass. 171, 176 n.5 (1977), citing *Commonwealth* v. *Lannon, supra.*

3. The defendant's contention that the judge wrongly permitted the Commonwealth's ballistics expert to answer a hypothetical question put to him by the prosecutor borders on the frivolous. Exploring the plausibility of the defendant's version of the incident, the prosecutor asked the witness whether the weapon might have been discharged by falling from the file cabinet onto the floor "striking nothing in between." The defendant argues that the question was improper because it omitted the

---

[4] Initially, the report was admitted without objection. Shortly thereafter, the judge's attention was directed to the word "Accident," which he then ordered struck from the report. The defendant incorrectly implies that the judge was without power to take such action after the report had been admitted without objection. "[A] party who succeeds in introducing incompetent evidence has no right to insist that it remain in the case. The trial judge may reconsider its admission, and strike it out of the case ... provided there is no surprise or other hardship to the party introducing it." *Crowley* v. *Swanson*, 283 Mass. 82, 85 (1933). There was no such surprise or hardship in this case (contrast *Catania* v. *Emerson Cleaners, Inc.*, 362 Mass. 388, 390 [1972]) as the exclusion followed momentarily the admission of the report.

defendant's assertions that the weapon had rubbed against his body and the cabinet before he removed it from his holster and placed it on the cabinet, and because the question assumed a fact not in evidence, viz., that the weapon struck nothing before hitting the floor. The defendant claims that there was testimony to the effect that the weapon struck a drawer of the cabinet during its fall. However, the portion of the transcript cited by the defendant for that testimony does not support his contention. Furthermore, none of the witnesses to whom the defendant described the incident shortly after its occurrence recalled that the defendant had mentioned that the weapon struck anything in falling from the top of the cabinet to the floor. The evidence was therefore sufficient to permit the hypothetical question. Compare *Commonwealth* v. *Baptiste*, 372 Mass. 700, 706-707 (1977). Moreover, on at least three occasions defense counsel asked expert witnesses (including the witness to whom the Commonwealth put its hypothetical question) questions of similar import which neither stated nor implied that the weapon struck anything during its fall. For this reason alone the judge was justified in allowing the question. See *Commonwealth* v. *Wilson*, 355 Mass. 441, 446 (1969).

4. The defendant argues that portions of the prosecutor's closing argument exceeded permissible bounds. He first challenges the prosecutor's characterization of the defendant's behavior as "a game" of "one-man Russian roulette" played for "thrills" but without the victim's knowledge or acquiescence. The defendant argues that these remarks exceeded the scope of any argument which could be properly based upon the evidence and fair inferences therefrom. *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). *Commonwealth* v. *Burke*, 373 Mass. 569, 574-575 (1977). However, as stated in our previous discussion of the defendant's motion for a directed verdict, the evidence permitted the inference that the defendant was involved in such a "game." Compare *Commonwealth* v. *Nordstrom*, 364

Mass. 310, 314-315 (1973). Cf. *Commonwealth* v. *Blaikie*, 375 Mass. 601, 611-613 (1978); *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 422-423 (1978). Contrast *Commonwealth* v. *O'Brien*, 377 Mass. 772, 777-778 (1979); *Commonwealth* v. *Roberts*, 378 Mass. 116, 122 (1979). While the prosecutor indulged in hyperbole in characterizing the Commonwealth's conclusion of what had taken place as "inescapable," it was not improper argument. Compare *Commonwealth* v. *Nordstrom, supra.* The same may be said of his remark that the gun was the defendant's "pride and joy." That statement was not an unfair inference to be drawn from the evidence that the defendant invariably carried the gun in a hip holster and was not known to have ever removed it from the holster while he was in the store.

The defendant challenges as prejudicial that part of the prosecutor's argument in which he said: "I submit to you that that's reckless and in and of itself to put live and blank ammunition in the same working firearm." Since defense counsel failed to object to this remark at the close of the prosecutor's argument, we pass upon its propriety only where there is a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Roberts, supra* at 122-123. *Commonwealth* v. *Storey*, 378 Mass. 312, 323 (1979). There is no such showing here. It should have been apparent to the jury that the prosecutor's comment was based on the opinions of the ballistics experts, including the defendant's expert, which were critical of the practice.

Finally, our duty to review the defendant's contention that it was error to permit the prosecutor in his argument to suggest that the Commonwealth could have induced false testimony from one of its witnesses is similarly limited to a showing of prejudice or a miscarriage of justice, since no objection was made or exception taken to this part of the argument or a request made for a corrective instruction. In any event, we think it clear that the comment was only intended to defend the credibility of a

witness whose testimony contained admitted inconsistencies. That line of argument was permissible. See *Commonwealth* v. *Stone*, 366 Mass. 506, 516 (1974); *Commonwealth* v. *Fitzgerald, supra* at 422, and cases cited.

*Judgment affirmed.*