Reginald **LANNON,** Petitioner, **Appellant,**

v.

William **HOGAN, et al., Defendants, Appellees.**

No. 83–1146.

United States Court of Appeals, First Circuit.

Argued Sept. 16, 1983.

Decided Oct. 25, 1983.

Certiorari Denied March 19, 1984. See 104 S.Ct. 1606.

Esther J. Horwich, Boston, Mass., for petitioner, appellant.

Marilyn L. Hotch, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Criminal Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Division, Boston, Mass., were on brief, for defendants, appellees.

Before BOWNES, Circuit Judge, ALDRICH and COWEN *, Senior Circuit Judges.

BOWNES, Circuit Judge.

This action is an appeal from the district court's dismissal of petitioner Reginald Lannon's habeas corpus petition challenging his first-degree murder conviction. In 1972, Lannon was convicted in the Suffolk Superior Court following a jury trial, and sentenced to life imprisonment. The Supreme Judicial Court of Massachusetts affirmed his conviction on direct appeal. *Commonwealth v. Lannon,* 364 Mass. 480, 306 N.E.2d 248 (1974). In 1978, Lannon filed a writ of error, alleging that the trial judge's instructions to the jury violated his fourteenth amendment right to due process of law; that petition was denied. *Lannon v. Commonwealth,* 379 Mass. 786, 400 N.E.2d 862 (1980). The Supreme Judicial Court likewise denied Lannon's petition for rehearing. In 1980, Lannon filed a habeas corpus petition in the United States District Court under 28 U.S.C. § 2254, once again challenging the constitutionality of the jury instructions. The district court, 555 F.Supp. 999, denied his petition.

It was established without contradiction at trial that Lannon's estranged wife Nancy

* Of the Federal Circuit, sitting by designation.

was fatally wounded at her home in the early morning on July 31, 1971, when a shotgun that Lannon was holding discharged at close range. The disputed issues concerned Lannon's state of mind. The Commonwealth introduced evidence, including eyewitness testimony, which supports the jury's verdict of first-degree murder, *i.e.,* premeditated, intentional and malicious killing. That evidence, essentially uncontradicted by Lannon, showed as follows. Lannon had driven to his wife's home earlier in the evening. There, he found his wife with her sister and a male companion. He apparently entered the house carrying a shotgun, and chased the three occupants about inside. When his wife's male companion fled down an alley outside, Lannon fired a shot after him, and then drove off. Returning a short while later, Lannon apparently reentered the house from the back and waited for the police officers who had assembled on the front porch to leave. He then accosted his wife on the porch, shotgun in hand. As he addressed her by name, the shotgun discharged at virtually point-blank range, shooting her through the chest. She was pronounced dead on arrival at a local hospital.

Lannon did not dispute the basic narrative of events as presented by the Commonwealth, but asserted two state-of-mind defenses. He contended first that the shooting was purely accidental, that he lacked malice and intent to kill, and that the discharge was caused by a defect in the shotgun. He also argued in the alternative that any responsibility for the killing on his part was diminished on grounds of mental illness so that in no event could he be convicted of any degree of homicide higher than manslaughter. On this issue he introduced the testimony of a psychiatrist.

Lannon objects first of all to the jury instructions on intent to kill and malice, both of which are elements of murder under Massachusetts law.[1] Lannon contends that in instructing the jury that "you may infer, that is, conclude, that a person ordinarily intends the natural and probable consequences of any act which is knowingly done" the trial judge impliedly raised presumptions of intent to kill and malice based on the mere fact of the killing, and thus impermissibly lightened or removed altogether the Commonwealth's burden of proving those elements beyond a reasonable doubt.

The proper constitutional analysis of this sort of jury instruction begins with a determination whether the inference created is permissive or mandatory.[2] *Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979); *County Court of Ulster County v. Allen,* 442 U.S. 140, 156–57, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). A permissive inference allows, but does not require, the trier of fact to infer an "elemental fact" such as intent or malice from proof of a "basic fact" such as a knowing act. Permissive inferences leave the trier of fact free to credit or reject the connection between basic and elemental facts: they place no burden of any kind on the defendant, and affect the prosecution's burden of persuasion only if there is no rational connection at all. *Ulster County Court,* 442 U.S. at 157, 99 S.Ct. at 2224. Mandatory inferences, on the other hand, require that the trier of fact find the elemental fact upon proof of the basic fact, at least until the defendant offers some evidence to rebut the connection. Thus, whether they are conclusive or merely burden-shifting, mandatory inferences place a burden on the defendant and detract from the prosecution's burden of persuasion. *Id.*

To determine whether a particular jury instruction raises permissive or mandatory inferences, it is necessary to look at the words actually spoken to the jury, for the constitutional standard depends on how "a reasonable juror could have interpreted the

---

1. The element that distinguishes first-degree murder from second-degree murder is premeditation. The instruction on premeditation is not at issue in this case.

2. Although "inference" often carries permissive connotations and "presumption" may suggest a mandatory inference, the terms are used interchangeably. *Ulster County Court,* 442 U.S. at 156–57, 99 S.Ct. at 2224.

instruction." *Sandstrom,* 442 U.S. at 514, 99 S.Ct. at 2454. In the present case, the judge instructed the jury in the following terms:

> Now, it is not often that a defendant charged with murder expresses in words his intention to kill. But *you may infer, that is, conclude, that a person ordinarily intends the natural and probable consequences of any act which is knowingly done.* And if a person uses upon another an instrument or weapon of such a nature and in such a way and under such circumstances that the use would naturally and probably result in the death of the other, you may infer or conclude that he did so with that specific intention to kill. *You are not required to come to that conclusion, but you may do so.*
>
> . . . .
>
> And just as a specific intent to kill may be inferred from the circumstances, so malice may be inferred from the circumstances. Where a killing is caused by the intentional use of fatal force without circumstances serving to mitigate, to justify the act, you may infer that malice is present.
>
> And once again, in determining whether a wrongful act is done with malice, *you may infer or conclude that a person ordinarily intends the natural and probable consequences of acts knowingly done.*
>
> And I say to you that if a person uses a deadly weapon in killing another, malice may be inferred from his use of such a weapon in the absence of explanatory or mitigating circumstances. *You may come to that conclusion; you are not required to come to it.*

App. 23–24 (emphasis added).

In both instructions, the words "you may infer" clearly indicate that the infer-

ences of intent and malice are permissive. Lannon argues, however, that by equating "infer" with "conclude" the trial judge imbued the inferences with a mandatory tone, and that a reasonable juror could have interpreted the instructions as relieving the Commonwealth of its full burden of persuasion concerning Lannon's state of mind.

We do not think that a reasonable juror could have misinterpreted the instructions. Not only are the particular sentences unambiguously phrased in permissive terms; in addition, they are both followed by an explicit reminder that the jury "may" draw the inferences but is "not required" to do so.[3] In this respect, these instructions are decisively different from the instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" which was held unconstitutional in *Sandstrom.* There, the instruction was phrased in unqualified declaratory terms, and the jurors "were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." *Sandstrom,* 442 U.S. at 515, 99 S.Ct. at 2454. In *Sandstrom,* the constitutional analysis hinged on the perceived danger that the instruction could have raised a mandatory inference of either the conclusive or the burden-shifting variety which would have undermined the prosecution's burden of proving each element of the charged offense beyond a reasonable doubt. *Id.* at 524, 99 S.Ct. at 2459. Where the inference is permissive, as in the present case, the *Sandstrom* rule does not apply.[4]

This court has consistently refused to hold that permissive inferences on intent,

---

**3.** Earlier in the jury charge, the trial judge defined "reasonable inferences" as "conclusions which are regarded as logical by reasonable people in the light of their experience in life." App. 14. Clearly the word "conclude" was used to mean "decide according to one's own best judgment" rather than "adopt a presumption predetermined by law."

**4.** Because the instruction does not come within the scope of *Sandstrom,* we need not address

the problem of retroactive application. We note, however, that in an analogous situation, the Supreme Court has declared its *Mullaney* holding retroactive in principle while allowing state courts considerable leeway to dispatch collateral attacks on procedural grounds. *See Hankerson v. North Carolina,* 432 U.S. 233, 244 n. 8, 97 S.Ct. 2339, 2345 n. 8, 53 L.Ed.2d 306 (1977). *Cf. Commonwealth v. Stokes,* 374 Mass. 583, 374 N.E.2d 87, 93 (1978) (applying "more careful scrutiny" to instructions "in any

however unfortunately phrased, rise to the level of constitutional error, either on direct appeal or collateral review. *Cf. United States v. DeWolf,* 696 F.2d 1, 3–4 (1st Cir. 1982) ("it is ordinarily reasonable to infer"); *United States v. Greenleaf,* 692 F.2d 182, 187–88 (1st Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983) ("it is reasonable ... for you to infer"); *Hardy v. United States,* 691 F.2d 39, 42 (1st Cir.1982) ("it is ordinarily reasonable to infer"); *McInerney v. Berman,* 621 F.2d 20, 23–34 (1st Cir.1980), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980) ("malice aforethought may be implied from such an intent"); *Gagne v. Meachum,* 602 F.2d 471, 472–73 (1st Cir.1979), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979) ("the rational probability is that a man of sound mind intends the natural and probable consequences of his act"). We have deplored such language as "a clear invitation to appellate trouble," *United States v. Ariza-Ibarra,* 605 F.2d 1216, 1228 (1st Cir.1979), but have refused to reverse criminal convictions on this basis alone. The instruction before us here is no different, and we find no constitutional error in the quoted language.[5]

A second aspect of the instruction on malice challenged by Lannon is the sentence; "Where a killing is caused by the intentional use of fatal force without circumstances to mitigate, to justify the act, you may infer that malice is present." Lannon argues that this language impliedly placed on him an unconstitutional burden of affirmatively proving mitigating or justifying circumstances to rebut a presumption of malice. *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

This part of the charge does not differ in any substantial way from the permissive inferences discussed above. The reference to the absence of justifying or mitigating circumstances merely echoes the trial judge's general definition of murder earlier in the charge as an *"unjustified killing* of another *under circumstances which do not reduce the crime* to the lesser crime of manslaughter." App. 22 (emphasis added). The absence of extenuating circumstances was thus clearly established as an element of the charged offense, which the Commonwealth had to prove beyond a reasonable doubt. The trial judge had explained this burden, as well as the presumption of innocence, in unmistakable terms:

[T]here is no obligation upon a defendant to prove his innocence. Indeed, he may sit back and say nothing. That is his right. . . . If he is found guilty, he must be found guilty not because he has proved his innocence, or failed to prove his innocence, I might say, but because the Commonwealth has sustained its burden of proving the guilt of a defendant beyond a reasonable doubt. . . . And if there is a reasonable doubt in the minds of the jury, then the defendant is entitled to that doubt and he is entitled to be acquitted.

App. 20–21. Although it might have been preferable for the judge to have reiterated during his inference instruction that the burden of proof as to the circumstances showing malice remained on the prosecution, we read the charge as a whole to have advised the jury amply to that effect. *McInerney,* 621 F.2d at 25. As we have stated elsewhere, "[w]e do not think that *Mullaney* requires a new trial in every pre-*Mullaney* case in which the jury was not told explicitly that the state had to prove

---

case where the trial occurred after the date of *Mullaney"*). Similarly, we need not broach the question of whether a *Sandstrom* error would require automatic reversal. *See Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983).

**5.** This court has held elsewhere that our function in reviewing habeas corpus petitions challenging state convictions "ends when we determine that the challenged jury instructions vio-

lated no federal constitutional rights of the petitioner." *Niziolek v. Ashe,* 694 F.2d 282, 290 (1st Cir.1982), citing *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). We also noted in *Niziolek* that an even stronger showing of error and prejudice is required on collateral review than on direct appeals. 694 F.2d at 290, quoting *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).

absence of [justifying circumstances] beyond a reasonable doubt." *Gagne,* 602 F.2d at 473 n. 3. The instruction on malice was free from constitutional error.

Lannon's third objection goes to the instruction on voluntary manslaughter. Lannon introduced testimony at trial that he was incapable of acting with the mental state required for murder, and that due to a mental illness he should not be convicted of any degree of homicide greater than manslaughter. The judge charged the jury as follows:

> Is Lannon to be judged as a reasonable man? Or is he to be held to a lower degree of criminal responsibility because of mental illness?
>
> Well, first of all, it's for you to determine whether or not you are *satisfied* that this man was mentally ill to such an extent that he is not to be judged by the same standards as you and I and everybody else. And that is to be determined upon the degree of weight that you give to the psychiatrist.
>
> . . . .
>
> If you feel under the circumstances, and taking into ... consideration and accepting the doctor's testimony that he was mentally ill, are you *satisfied* that that illness was such that he ought to be judged by a different standard on the matter of manslaughter? And if so, then you will *consider* whether or not there was, in fact, here a killing intentional, but committed on sudden impulse and a sudden transport of passion and adequate provocation.

App. 34 & 38 (emphasis added). Lannon contends that the instruction impliedly shifted to him a burden of "satisfying" the jury that he should be judged under a more lenient standard than the "reasonable man" test, and that it allowed the jury to find him guilty of murder even if there were a reasonable doubt on the question of provocation.

■ We need not decide whether a reasonable juror might have interpreted the instruction to deny Lannon the full benefit of the more lenient standard for provocation, for he was entitled to nothing more favorable than the "reasonable man" test under Massachusetts law. In affirming Lannon's conviction on direct appeal, the Massachusetts Supreme Judicial Court confirmed its refusal to recognize a diminished responsibility doctrine. *Commonwealth v. Lannon,* 306 N.E.2d at 251. The only possible confusion resulting from the instruction would thus have benefited Lannon by making it possible to reduce the homicide from murder to manslaughter more easily than was warranted in state law. In any event, by convicting Lannon of first-degree murder, the jury necessarily found beyond a reasonable doubt that he had acted with premeditation and without adequate provocation. Because Lannon can show no prejudice resulting from the voluntary manslaughter instruction, we hold that any error that may have occurred was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

Lannon's fourth and final objection concerns the instruction on involuntary manslaughter. Lannon had offered evidence at trial that he lacked an intent to kill and that the shotgun discharged accidentally. Referring to these allegations, the judge charged the jury:

> *If you accept that story,* then you must consider whether or not, if you *find* it to be a fact, that loading that shotgun, as he said he did, and apparently with the safety off, and going to the door, was such wanton, reckless misconduct that he should be responsible for the natural and probable consequences of that reckless handling of the gun.
>
> If you *find* that the gun was discharged accidentally, but his having it there under all the circumstances was wanton and reckless conduct on his part, he'd be guilty of involuntary manslaughter.
>
> On the other hand, if it was an accidental discharge of that gun, and you consider his activity not to have been wanton and reckless in the way he handled that gun, then you are to find him not guilty.

App. 38–39 (emphasis added). Lannon contends that the phrase "accept that story" and the repeated use of the word "find" imply that he bore some burden of proving his innocence.

■ The phrases "if you accept that story" and "if you find that the gun was discharged accidentally" are not particularly well chosen, and we do not recommend that they be used, for they might be taken "in artificial isolation," *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), to imply denigration or disbelief of a defendant's testimony. They must be viewed not by themselves, however, but rather "in the context of the overall charge." *Id.* at 146–47, 94 S.Ct. at 400. The trial judge had twice previously in his charge used similar language in a thoroughly neutral way,[6] and used it in this instruction merely to indicate that the jury had to decide whether Lannon was guilty of involuntary manslaughter or of no crime at all *in the event that the Commonwealth failed to prove beyond a reasonable doubt that the killing was intentional.* The only possible basis for such a doubt, aside from failure to introduce sufficient evidence on the prosecution's part, would have been Lannon's own testimony that the shotgun discharged by accident. In referring to Lannon's version of events, the trial judge in no sense suggested that Lannon bore any burden of persuasion on any element of involuntary manslaughter, and no reasonable juror could have thought so.[7]

We find no error of constitutional dimensions in the instruction on involuntary manslaughter; yet even if there were, we would find it harmless. The jury found Lannon guilty beyond a reasonable doubt of pre-meditated murder under instructions which we have already examined above and found constitutionally valid. The jury's verdict indicates unequivocally that it found both involuntary manslaughter and innocence to be disproved beyond a reasonable doubt. *See Guthrie v. Warden,* 683 F.2d 820, 822–23 (4th Cir.1982) (*Sandstrom* and *Mullaney* errors in manslaughter instruction "cured by the jury's verdict of first-degree murder"); *Washington v. Harris,* 650 F.2d 447, 453 (2d Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982) (manslaughter instruction erroneous under *Sandstrom,* but not reached by jury because defendant was convicted of murder under constitutionally valid instructions). The involuntary manslaughter instruction could therefore not possibly have contributed to Lannon's conviction, nor could it have denied him due process.

*The district court's judgment denying Lannon's habeas corpus petition is affirmed.*

ALDRICH, Senior Circuit Judge, concurring.

I readily accept the court's reasoned disposition of the instructions on permissible inferences, but I am tired of these continual complaints. If the evidence does not warrant the inferences, the defendant is entitled to a directed acquittal. If they are warranted, why should not the jurors be told so in everyday language, lest they think there are artificial rules restricting their natural processes of thought? To say there is an available inference unfavorable to the defendant is no more burden-shifting than to say there is evidence unfavorable to him. The court does not have to charge on

---

**6.** In defining the jury's fact-finding function, the trial judge stated, "you have the right to accept the whole of any witness' story, to reject the whole of any witness' story, or to accept part and to reject part." App. 16. He also advised them, "[you may] use your own common experience and judgment in the affairs of life to determine whether a particular story or a particular piece of testimony is reasonable or unreasonable, probable or improbable." App. 17.

**7.** Lannon cannot point out an element of involuntary manslaughter as to which a burden of proof could have been attributed to him. Intent to kill is required for murder, but has nothing to do with involuntary manslaughter. Thus, the only logical way to interpret the trial judge's reference to an accidental killing in the instruction at issue is as a circumstance negating intentional homicide, *i.e.,* murder or voluntary manslaughter, and raising the issue of involuntary manslaughter.

the burden of proof in every second sentence.