**Thomas F. McINERNEY, Petitioner,**

v.

**Louis BERMAN and Francis X. Bellotti, Respondents.**

**No. 79–1371.**

United States Court of Appeals, First Circuit.

Argued Dec. 6, 1979.

Decided May 8, 1980.

---

Stephen L. Saltonstall, Boston, Mass., with whom Norman S. Zalkind, Boston, Mass., was on brief, for petitioner.

Roberta Thomas Brown, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for respondents.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal from the denial of a habeas corpus petition brought by Thomas McInerney, a Massachusetts state prisoner serving a life sentence for second degree murder.[1] Petitioner claims that the trial judge's instructions to the jury impermissibly shifted the burden of proof to him, violating his right to due process. We find no denial of due process and affirm the judgment of the district court, 473 F.Supp. 187.

On the evening of August 15, 1974, petitioner and the victim, Cynthia Hartford, previously strangers, met at a Boston bar, where they drank and spent the evening together until closing time. At the victim's suggestion, they went to her apartment, where they had more alcohol and attempted to have intercourse. When the petitioner's impotency prevented consummation, the victim began to laugh at him. He told her to stop and slapped her. She began to scream and he put his hand over her mouth, grabbed a piece of twine lying nearby and strangled her.

At the close of the state murder trial, the judge gave a lengthy and comprehensive set of instructions to the jury. It was instructed generally on the burden of proof, presumption of innocence, and in detail on the differing elements of the various verdicts it could bring in.[2] In the course of instructing on the element of malice, essential for a murder conviction, the judge advised the jurors of their right to draw a presumption or inference[3] of malice from proof of intentional use of a deadly weapon. Since the references to this presumption are the crux of this petition, we reproduce in the margin the portions of the charge containing such language.[4] Mindful that the

---

1. Petitioner was convicted of first degree murder but, on appeal to the Massachusetts Supreme Judicial Court, the conviction was vacated and the entry of a verdict of guilty of murder in the second degree was ordered because it was found there was no deliberate premeditation. *Commonwealth v. McInerney*, 373 Mass. 136, 365 N.E.2d 815 (1977).

2. He methodically explained to the jury the distinctions between first and second degree murder and between murder and manslaughter.

3. Although technically the terms "presumption" and "inference" differ in meaning, the judge appeared to use them interchangeably. The significant distinction is between presumptions or inferences which are mandatory and those which are permissive.

4. "There are inferences which you may draw. You may, from having found one or more facts, decide that, 'Since this fact or these facts exist, then logically I am also compelled to find another fact.' So long as your inference is logical and reasonable, you may make an inference and you may use that inference as the basis for a finding of fact.

. . . . .

"An intentional killing may be either murder or manslaughter. So I reiterate, in order to determine whether an unlawful killing is murder or manslaughter, you have to consider the circumstances which precede the killing, you have to consider the circumstances that attend the killing, you must look at the act of the killer

to determine the presence or the absence of malice. . . .

"*Now, malice aforethought may be implied from such an intent unless the circumstances are such as to reduce the crime to manslaughter.* . . .

"*Where an unlawful killing is intentional or purposeful, there may be circumstances which will rebut the presumption of malice and reduce the character of that unlawful killing from murder to manslaughter, and I will speak of those circumstances again which rebut the presumption of malice* but first I think we should consider the expression 'malice aforethought,' since malice is an essential ingredient of the crime of murder.

. . . . .

"*When a killing is shown to have been committed without justification and as a result of a deliberate act on the part of a defendant, then it is proved sufficiently to have been done with malice aforethought.* But whether a killing is actually committed with malice aforethought is determined from the nature and the quality of the act which attends the killing, because that is the only way to decide what reveals the state of the heart and the mind of the person who does the killing.

"If the circumstances attending a killing disclose that the death flows from a purposeful, selfish, wrongful motive as distinguished from the frailty of human nature, then there is malice aforethought. *When a killing is caused by the intentional use of a deadly weapon, malice may be inferred, unless by the circumstances the jury considers that it has been disproved.*

challenged portions must be read in the context of the entire charge, *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), we include the relevant surrounding portions that petitioner does not challenge. The challenged portions are italicized.

Petitioner argues that the instructions as to the presumption of malice operated to shift the burden of proof from the prosecution, relieving it of proving an essential element of the crime of murder. The Supreme Court recently announced the following standard in testing the propriety of a jury charge: "whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979).

■ Our analysis of the charge requires us first to determine whether the presumption is permissive or mandatory. *County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). A permissive presumption allows but does not require the jury to infer the presumed fact upon proof by the prosecution of the "evidentiary" or predicate fact. *Id.* at 157, 99 S.Ct. at 2224. The use of a permissive presumption is constitutional if there is a rational connection between the predicate and presumed facts. *Id.* at 157, 99 S.Ct. at 2224. *See also Barnes v. United States*, 412 U.S. 837, 841, 93 S.Ct. 2357, 2360, 37 L.Ed.2d 380 (1973); *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943).

■ A mandatory presumption is of either the conclusive or burden-shifting variety. An instruction from the judge that proof of one fact is irrebuttable proof of a presumed fact is conclusive. A presumption that shifts the burden of proof to the defendant can be recognized by language that instructs the jury that proof of the predicate implies proof of the presumed fact unless disproved by the defendant himself by a preponderance of the evidence. *Sandstrom v. Montana, supra*, 442 U.S. at 516, 99 S.Ct. at 2455. A mandatory presumption which shifts the burden of persuasion by requiring the defendant to establish affirmatively the negative of an element of the offense is unconstitutional. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). However, a permissive presumption which allows but does not require the jury to find that the prosecution has met its burden as to the inferred fact on proof of the predicate fact at the most shifts the burden of production to the defendant, which is not *per se* a violation of due process. *Id.* at 702–3 n.31, 95 S.Ct. at 1891 n.31. The presumption must then meet the rational-connection test in order to survive constitutional scrutiny. *See Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380; *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519.

The language used in the charge gave the jury the right to make inferences, but imposed no obligation on it to do so. The jury was advised that it might infer malice from the intentional use of a deadly weapon, but that all of the circumstances attending the killing ought to be considered. It was not instructed that a presumption of malice arose as a matter of law from the use of a deadly weapon, nor was it told that the defendant had the burden of rebutting such presumption.

■ Following the *Sandstrom* reasonable-juror's-interpretation test, however, it is necessary to determine whether this permissive presumption could have reasonably been interpreted by the jury as shifting the burden of proof to the defendant to prove his lack of malice. In making this determination, we must still be guided by the holding in *Cupp v. Naughten*, 414 U.S. 141, 94

"Now, the fact that a killing is accomplished intentionally does not necessarily make it murder. *An intentional killing does carry with it the presumption of malice aforethought but the circumstances which precede and accompany the intentional killing may be such as to rebut the presumption of malice and reduce the crime, therefore, to manslaughter"* (emphasis added.)

S.Ct. 396, 38 L.Ed.2d 368, which requires us to look at the charge as a whole. *See United States v. Thomann*, 609 F.2d 560, 565 (1st Cir. 1979). Reading *Sandstrom* and *Cupp* together, the question becomes whether a reasonable juror could have interpreted the instruction on the inference of malice in an impermissible way regardless of the surrounding instructions and the charge read in its entirety. A reasonable juror can be expected to listen to all he/she is told by the judge and it will be presumed that he/she will not isolate a particular portion of the charge and ascribe to it more importance than the rest. This is especially so where, as here, the judge explicitly cautioned the jury not to be influenced by how much or how little time he devoted in his charge to any particular instruction.

The only portion of the charge that might suggest a persuasion-shifting presumption is the following language:

> When a killing is caused by the intentional use of a deadly weapon, malice may be inferred, unless by the circumstances the jury considers that it has been disproved. . . . An intentional killing does carry with it the presumption of malice aforethought but the circumstances which precede and accompany the intentional killing may be such as to rebut the presumption of malice and reduce the crime, therefore, to manslaughter.

At the outset of this analysis, we note that, like the inference of knowledge from unexplained possession of stolen goods in *Barnes v. United States, supra,* "we deal with a traditional common-law inference deeply rooted in our law." 412 U.S. at 843, 93 S.Ct. at 2362. "It has long been recognized in this Commonwealth that malice may be inferred from the intentional use of a deadly weapon." *Commonwealth v. Gagne*, 367 Mass. 519, 326 N.E.2d 907, 909 (1975) (citations omitted).

The offending language in *Sandstrom* began, "the law presumes." Nowhere in the challenged part of the instruction in this case does there appear similar language. Rather, the judge used the words "you *may* make an inference," "malice *could* be in-

ferred" (emphasis added). Even where the judge's language is ambiguous as to how a presumption operates, he couched it in terms of the jury's duty to look at all the circumstances surrounding the killing which might rebut any presumption of malice. *See* note 4, *supra.* We think that reasonable jurors, having been instructed repeatedly that the Commonwealth must prove its case by proving every element of the offense beyond a reasonable doubt, would have properly understood the instructions on presumptions to mean that they could use inferences from the facts surrounding the killing that common sense and experience made appropriate in deciding whether the prosecution had proved its case of murder.

The jury was, in effect, instructed that it was to do what every jury has the right and sworn duty to do—find facts based on proof and on reasonable inferences from proven facts. *See Gagne v. Meachum*, 602 F.2d 471, 473–4 (1st Cir. 1979). The reasonable juror could not have understood "may" to mean "shall," ignored the rest of the cautionary instructions in the charge and focused solely on a small portion of it in which the presumption of malice from intentional use of a deadly weapon was discussed. This is not a case where the jury was instructed that an intentional killing is *per se* done with malice, which has been held to be reversible error. *United States v. Wharton*, 433 F.2d 451 (D.C. Cir. 1970). On the contrary, the judge, here, reminded the jury, with each mention of the permissible inference, that it was to consider the circumstances preceding and attending the killing in determining whether or not it was done with malice. We agree with the Massachusetts Supreme Judicial Court that

> [a] judge does not violate constitutional principles of due process by advising the jury that, if they think it reasonable, they may infer the existence of malice from the fact, proved beyond a reasonable doubt, that a defendant shot the victim, stabbed him, or otherwise harmed him with a deadly weapon.

*Gagne v. Commonwealth*, —— Mass. ——, 377 N.E.2d 919, 923 (1978).

■ Although it might have been preferable for the judge to have reiterated during his inference instruction that the burden of proof as to the circumstances showing malice remained on the prosecution, we read the charge as a whole to have advised the jury amply to that effect. The instruction to consider all the facts rather than isolate the single predicate fact of use of a deadly weapon supports the reasonable interpretation of the presumption as permissive. *County Court of Ulster County v. Allen*, 442 U.S. at 163, 99 S.Ct. at 2227; Nesson, *Reasonable Doubt and Permissive Inferences*, 92 Harv.L.Rev. 1187, 1223 (1979).

We find it instructive, in looking at the charge as a whole, to contrast the language on the presumption of malice with another section of the charge. The judge gave the following instruction on the legal effect of evidence of intoxication: "I charge you *as law* that the use of intoxicating liquor . . in and of itself is no defense to a charge of murder." "Drunkenness *cannot* reduce the crime to manslaughter" (emphasis added). Having been told this, it is difficult to conclude that reasonable jurors could have interpreted entirely different phraseology on the inference of malice as having the same conclusive effect.

Coming to the inference itself, we have no difficulty in finding a rational connection between the proven fact of an intentional killing with a deadly weapon and the presumption of malice. The Commonwealth produced a number of witnesses who gave the same account of the killing, as admitted to them by the defendant. The defendant produced no evidence and did not testify. Based on the evidence, the jury was warranted in finding that the following facts had been proven beyond a reasonable doubt. The defendant and the victim consumed a considerable amount of alcohol and returned to her apartment intending to

have sexual relations. Once there, the drinking continued and the two attempted to have intercourse. When she realized that the defendant was impotent, the victim began to laugh at him, claiming she had wasted her evening. This derision led the defendant to slap or hit her, which caused her to scream. It was at that point that the defendant reached for a piece of twine lying nearby and put it around her neck, squeezing until he saw blood coming from her mouth. Believing she was dead, he picked up some beer cans and her purse and left, discarding these articles near his apartment.

■ Malicious killing, or murder, was defined for the jury as occurring where "death flows from a purposeful, selfish, wrongful motive as distinguished from the frailty of human nature." Since it is a subjective state of mind, malice would be nearly impossible to prove beyond a reasonable doubt by other than circumstantial evidence and the use of logical inferences that comport with human experience. "[R]educed to its lowest terms, 'malice' in murder, means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act, coupled perhaps with an implied negation of any excuse or justification." *Commonwealth v. Chance*, 174 Mass. 245, 252, 54 N.E. 551, 554, *quoted in Commonwealth v. Gricus*, 317 Mass. 403, 410, 58 N.E.2d 241, 245 (1944). The use of a deadly weapon, and a twine garrotte can be as deadly as a gun or knife, rationally supports the conclusion that the defendant's motive was purposeful, selfish and wrongful, without any apparent justification or mitigation. There was no evidence of any mitigating circumstances.[5]

We are satisfied that on the facts of the present case, the judge's charge effectively

---

5. The evidence did show that the victim subjected the defendant to derision, but "[i]nsults and arguing cannot provide provocation . . .."

*Commonwealth v. Greene*, 372 Mass. 517, 362 N.E.2d 910, 913 (1977).

instructed the jury of a reasonable inference it was permitted, but not required, to make and that the charge fully comported with due process.[6]

*Affirmed.*

---

6. We see no merit in petitioner's claim that other portions of the charge contributed to an overall violation of due process.