Gerald M. HILL, Petitioner, Appellant,

v.

Michael MALONEY,
Respondent, Appellee.

No. 90–1294.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1990.

Decided Nov. 21, 1990.

George F. Gormley with whom Gormley, Howard & Goodale, Boston, Mass., was on brief, for petitioner, appellant.

Judy G. Zeprun, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief, for respondent, appellee.

Before SELYA, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Petitioner Gerald Hill, a Massachusetts state prisoner serving a life sentence for second-degree murder, claims that a jury instruction given at his trial relieved the government of the burden of proving malice—the crucial element in distinguishing between second-degree murder and manslaughter in Massachusetts—and thereby violated his due process rights. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The district court found no constitutional flaw in the jury charge, and therefore denied Hill's petition for habeas relief. We now reverse.

## I.

The events leading to petitioner's arrest and conviction, as the jury could have found them, were as follows. On October 22, 1977, petitioner, then 14 years old, left a Boys Club in Boston with three friends after playing basketball. On their way to the store to buy some tonics, the group passed a doorway where Murphy, the victim, was standing and smoking a pipe. When ashes from Murphy's pipe fell on the last of the four boys to walk past, an argument broke out. The other three youths returned. All four punched and kicked Murphy until he fell to the ground. At some point Murphy threw a bottle at one of them. As the four youths started to leave, Murphy grabbed petitioner by the ankle. The boy struggled to get away, and then called to his friends for help. One of the boys tried to loosen Murphy's grip on petitioner, but was unable to free his friend. Several witnesses testified that petitioner next pulled a knife from his pocket, stabbed Murphy twice and ran away.[1]

The indictment against petitioner charged him with either first or second-degree murder, and the judge instructed the jury on both of those crimes as well as manslaughter. Several hours after beginning deliberations, the jurors asked to be reinstructed on the definitions of second-degree murder and manslaughter. The judge then gave the following supplemental instruction:

So to explain what murder in the second degree is, it differs from murder in the first degree in that murder in the first degree is murder committed with deliberately premeditated malice aforethought, and in our law, under our cases, the difference between murder in the first degree and murder in the second degree is that in murder in the second degree there is no requirement on the Commonwealth to show deliberate premeditation. So that murder in the second degree is a murder committed with malice, but not with premeditated malice aforethought.

Now, the difference between murder, whether it be the first or second degree,

---

1. Petitioner admitted that he struck and kicked Murphy, but denied both possession and use of a knife.

and manslaughter is that there is no requirement on the government in a manslaughter case to prove the element of malice. That's where manslaughter differs from murder, and the word "malice" you will remember, I defined it to you this morning and said to you—I don't quote my words—but I tell you that I did say that the word "malice" as used in the law at times was different than the word "malice" as used in everyday English usage where you talk about ill will toward another person, that malice as used in this technical sense in the law includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. It is not confined to ill will, but is intended to denote an action flowing from any wicked or corrupt motive. A thing done malo animo, two Latin words meaning with an evil mind, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, fatally bent on mischief. *And therefore, malice is implied from any deliberate or cruel act against another, however sudden.* (Emphasis added.)

The following morning, the jury returned a verdict of guilty of murder in the second degree. In his appeal to the Massachusetts Supreme Judicial Court, petitioner argued, *inter alia,* that the portion of the charge underscored above set up a presumption that relieved the Commonwealth of its burden of showing beyond a reasonable doubt that he acted with malice, and as a result deprived him of his right to due process. The SJC, following a brief discussion, concluded that the charge as a whole was "adequate," and that it "neither relieve[d] the Commonwealth of its burden of proof, nor ... invade[d] the fact-finding function of the jury." *Commonwealth v. Hill,* 387 Mass. 619, 625, 442 N.E.2d 24, 28 (1982).

In denying petitioner's subsequent petition for habeas corpus, the federal district court agreed that the malice instruction, when read "within the overall context of the charge and not judging it in artificial isolation," did not unconstitutionally shift the burden of proof to petitioner. Petitioner appealed, and we now address his claim.[2]

## II.

The Due Process Clause of the Fourteenth Amendment requires that the prosecution bear the burden of proving every essential element of a crime beyond a reasonable doubt, and evidentiary presumptions in a jury charge that have the effect of relieving the government of that burden are therefore unconstitutional. *Sandstrom,* 442 U.S. at 524, 99 S.Ct. at 2459; *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). *See also In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Petitioner Hill claims that the trial court's instruction that "malice is implied from any deliberate or cruel act against another, however sudden," set up a presumption that relieved the government from the burden of proving malice. He claims the jury was told, in effect, that if it found that he did the "cruel" act of stabbing, it had to find malice, and it therefore had to find him guilty of murder rather than manslaughter.

Our resolution of this claim requires several layers of analysis. First, we must determine whether the challenged instruction creates a mandatory presumption, or merely a permissive one. A mandatory presumption instructs the jury that it *must* infer an "elemental fact" such as intent or malice from proof of a "basic fact" such as a knowing act. *Lannon v. Hogan,* 719 F.2d 518, 520 (1st Cir.1983), citing *Ulster County Court v. Allen,* 442 U.S. 140, 157,

**2.** Although Hill failed to object to the instruction, the SJC considered his claim of error on the merits because the case was tried before the Supreme Court's decision in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which held unconstitutional jury instructions that relieve the government of the burden of proving the essential elements of a crime.

*See Hill,* 387 Mass. at 624 n. 9, 442 N.E.2d at 28 n. 9. Hill unquestionably was entitled to the benefits of the *Sandstrom* decision because the Supreme Court decided the case before his conviction became final. *See Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 2944–45, 106 L.Ed.2d 256 (1989); *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979).[3] Such presumptions violate the Due Process Clause if the presumed fact is an element of the offense for which the government should have shouldered the burden of persuasion. A permissive presumption allows but does not require the jury to infer the elemental fact upon proof of the basic facts. It does not relieve the government of its burden of persuasion because the government still must convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. The use of a permissive presumption is constitutional so long as there is a "rational connection" between the predicate and presumed facts, *McInerney v. Berman*, 621 F.2d 20, 23 (1st Cir.1980). *See Franklin*, 471 U.S. at 314–315, 105 S.Ct. at 1971–72, citing *Ulster County Court*, 442 U.S. at 157–63, 99 S.Ct. at 2224–28.

■ Second, if we conclude that the specific language challenged by petitioner set up a mandatory presumption, we then must consider whether other parts of the instruction explained "the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption," *Franklin*, 471 U.S. at 315, 105 S.Ct. at 1971, citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Finally, we must consider whether the instruction, even if reasonably understood to relieve the government of its burden on an element of the offense, nevertheless was harmless beyond a reasonable doubt. *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam); *Rose v. Clark*, 478 U.S. 570, 580, 106 S.Ct. 3101, 3107, 92 L.Ed.2d 460 (1986); *Quigley v. Vose*, 834 F.2d 14, 16 (1st Cir.1987).

A.

■ In *Sandstrom*, the Supreme Court unanimously held unconstitutional a jury instruction given at the defendant's murder trial that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts," concluding that this language created a mandatory presumption of intent upon proof of other elements of the offense. The justices acknowledged that "some jurors may have interpreted the challenged instruction as permissive, or, if mandatory, as requiring only that the defendant come forward with 'some' evidence in rebuttal," 442 U.S. at 519, 99 S.Ct. at 2456. If those were the only reasonable interpretations, the Court observed, there would have been no constitutional problem because the government would have retained the burden of persuasion. The instruction, however, also was susceptible to either of two additional interpretations:

> First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

442 U.S. at 517, 99 S.Ct. at 2456 (emphasis in original).

We believe the specific language challenged by petitioner in this case is flawed in the same manner as was the language in *Sandstrom*. The charge that "malice *is*

---

3. "A mandatory presumption may be either conclusive or rebuttable. A conclusive presumption removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption. A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is unwarranted." *Franklin*, 471 U.S. at 314 n. 2, 105 S.Ct. at 1971 n. 2. Whether they are conclusive or merely burden-shifting, mandatory inferences place a burden on the defendant and reduce the prosecution's burden of persuasion.

implied" appears to state an unswerving principle of law no less than did the offending language in *Sandstrom*, ostensibly informing the jury that a finding of a "deliberate" or "cruel" act resolves the question of malice. The jurors "were not told that they had a choice, or that they *might* infer that conclusion; they were told only that [malice *is* implied]," *Sandstrom*, 442 U.S. at 515, 99 S.Ct. at 2454 (emphasis added).

The language challenged here also is equivalent to phrases found unconstitutional in other cases applying the *Sandstrom* principles. In *Yates v. Aiken*, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988), for example, the problematic instruction closely paralleled the one before us, informing the jury that "malice is implied or presumed from the use of a deadly weapon." Similarly, in *Doucette v. Vose*, 842 F.2d 538 (1st Cir.1988), we deemed erroneous the following instruction:

> When the killing is caused by the intentional use of a deadly weapon, such as a knife, there arises a presumption that the killing was with malice aforethought.

Indeed, the language used in the supplemental instruction was drawn nearly verbatim from an old Massachusetts case in which it clearly was intended to set up a mandatory presumption. In *Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 304 (1850), the court stated that malice as used in the phrase "malice aforethought"

> is used in a technical sense, including not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. It is not confined to ill-will towards one or more individual persons, but is intended to denote an action flowing from any wicked and corrupt motive, a thing done *malo animo*, where the fact has been attended with such circumstances, as carry in them the plain indications of a heart regardless of social duty, and fatally bent on mischief. And therefore malice is implied from any deliberate or cruel act against another, however sudden.

Several paragraphs later, the *Webster* opinion explicitly states "that the implication of malice arises in every case of intentional homicide," *id.* at 305, and that once the fact of the killing has been proven, it is the defendant's burden to prove lack of malice, unless the evidence against him also demonstrated mitigating circumstances. The court then explained the basis for the presumption of malice:

> This rule is founded on the plain and obvious principle, that a person must be presumed to intend to do that which he voluntarily and wilfully does in fact do, and that he must intend all the natural, probable, and usual consequences of his own acts.

*Id.* at 305.

This portion of the *Webster* decision, directing a jury to presume intent from an act and placing the burden on the defendant to disprove malice, obviously conflicts with our present understanding of " 'the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' " *Sandstrom*, 442 U.S. at 523, 99 S.Ct. at 2459 (quoting *Morissette v. United States*, 342 U.S. 246, 274–75, 72 S.Ct. 240, 255–56, 96 L.Ed. 288 (1952)). *See Mullaney v. Wilbur*, 421 U.S. 684, 704, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508 (1975) (due process requires that prosecution bear the burden of proving absence of heat of passion on sudden provocation to support conviction for murder rather than manslaughter). *See also Commonwealth v. Stillwell*, 387 Mass. 730, 443 N.E.2d 1272 (1982) (reversing first-degree murder conviction where jury instructions used portions of *Webster* charge explicitly placing burden on defendant to disprove malice and stating presumption that defendant intended "all the natural, probable, and usual consequences of his own acts"). Thus, the trial court in the instant case borrowed language specifically designed to create what is now unquestionably an unconstitutional presumption. It is therefore no stretch for us to conclude that this language is at least easily susceptible to such an interpretation.

The infirmity of the language is further evident when contrasted with instructions that we have upheld as being permissive rather than mandatory. In *McInerney*,

621 F.2d at 24, we noted the judge's repeated use of phrases such as "you *may* make an inference" and "malice *could* be inferred." Similarly, in *Lannon*, 719 F.2d at 521, we noted the words "you may infer" and observed that they clearly indicated that the inferences of intent and malice were permissive. *See also id.* at 522 (citing other cases finding no constitutional error in such phrases as "it is ordinarily reasonable to infer," "it is reasonable ... for you to infer," "malice aforethought may be implied from such an intent," "the rational probability is that a man of sound mind intends the natural and probable consequences of his act"). *See also, e.g., Commonwealth v. Albert*, 391 Mass. 853, 860 n. 2, 466 N.E.2d 78, 83 n. 2 (1984) ("Always remember that when you are dealing with inferences you never have to infer anything. You may, if you want to. But you do not have to draw any inferences whatsoever."); *Commonwealth v. Fitzgerald*, 380 Mass. 840, 845, 406 N.E.2d 389, 394 (1980) (malice "may be implied from an act").

Because the instruction in this case was phrased in "unqualified declaratory terms [as opposed to permissive terms]," *Lannon*, 719 F.2d at 521, " '[i]t is clear that a reasonable juror could easily have viewed such an instruction as mandatory,' " *id.* (quoting *Sandstrom*, 442 U.S. at 515, 99 S.Ct. at 2454).

### B.

■ Examination of the specific language challenged is but a starting point. We now must consider whether other parts of the judge's charge adequately elaborated on the "malice is implied" statement so as to offset any erroneous impression given by that language. *Franklin*, 471 U.S. at 315, 105 S.Ct. at 1971; *McInerney*, 621 F.2d at 23–24. General instructions regarding the presumption of innocence

and the state's burden of proving all elements of a crime beyond a reasonable doubt are insufficient to cleanse the potentially unconstitutional version of the malice instruction because "[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to [malice] could be satisfied," *Sandstrom*, 442 U.S. at 518–519 n. 7, 99 S.Ct. at 2456–57 n. 7. Even an instruction directly contrary to the erroneous one, which by itself correctly stated the law, "will not suffice to absolve the infirmity," *Franklin*, 471 U.S. at 322, 105 S.Ct. at 1975, because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict," *id.*

■ Thus, our task is to determine whether other language in the charge *explains* the infirm language sufficiently so that there is no reasonable likelihood that the jury believed it must find malice if it found petitioner did the stabbing, *id.* at 323 n. 8, 105 S.Ct. at 1976 n. 8. *See also Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990) (standard for reviewing jury instructions claimed to restrict impermissibly a jury's consideration of relevant evidence is "whether there is a reasonable likelihood that the jury has applied the challenged instruction" unconstitutionally).[4]

We conclude that the charge in this case, taken as a whole, fails the test. The thrust of the supplemental charge that ends with the offending "malice is implied" language is to inform the jurors that malice is not as limited a concept as they might have believed. The jurors were told that malice "is not confined to ill will" but includes "every other unlawful and unjustifiable motive." This expansive depiction of malice would reinforce an interpretation of the final sentence as establishing a presumption that

---

**4.** We note that in its review of the challenged language, the district court in this case stated, "In my view, a reasonable juror *could have easily interpreted* the judge's charge on malice as 'instructing it to do what every jury has the right and sworn duty to do—find facts based on proof and on reasonable inferences from proven

facts,' " Opinion at 6 (emphasis added) (quoting *McInerney*, 621 F.2d at 24). The underscored phrase obviously reverses the relevant inquiry, which should focus on whether a reasonable juror was likely to derive the *incorrect* meaning from the instruction.

malice is present whenever there is a deliberate or cruel act.

Only one sentence in the supplemental charge suggests limits on the universe of circumstances in which one may find malice: "A thing done malo animo, two Latin words meaning with an evil mind, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty, fatally bent on mischief." Despite the clumsy wording, if the charge had stopped there, it would have been constitutionally adequate because this statement would have suggested that a bad act is not always accompanied by malice.[5] But when the sole limiting statement is juxtaposed with the clear and concise "malice is implied" language, and prefaced by the phrase, "And therefore," we think it likely that a jury would understand the concluding sentence as a short-hand summary of the full supplemental instruction. Thus, the message conveyed by the instruction in its entirety is that the concept of malice is much broader than ill will, and that, in fact, "a heart regardless of social duty, fatally bent on mischief" is presumed whenever there is a "deliberate or cruel act, however sudden." No part of the instruction advised the jurors that the inference of malice was permissive rather than mandatory.

Moreover, in creating a presumption of malice based on a "deliberate or cruel act, however sudden," the instruction was particularly misleading in the circumstances of this case, which arguably involved a sudden confrontation that unexpectedly escalated out of control. Under Massachusetts law, manslaughter is defined as "a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, *or upon sudden combat,*" *Commonwealth v. Soaris,* 275 Mass. 291, 299, 175 N.E. 491, 494 (1931) (emphasis added). *See also Commonwealth v. Freiberg,* 405 Mass. 282, 302, 540 N.E.2d 1289, 1302 (1989); *Commonwealth v. Campbell,* 352 Mass. 387, 397, 226 N.E.2d 211, 218 (1967). To say in this context that malice *is* implied, "however sudden" the act in question, is therefore to distort entirely the distinction between murder and manslaughter—the issue that troubled the jury—because a key characteristic of manslaughter is that it is a sudden killing. To avoid misleading the jury, the judge needed to touch on *both* aspects of suddenness with respect to manslaughter, informing the jurors not only that malice may be formed in an instant but also that it is "'negated when the intention to kill is formed in the heat of sudden affray or combat,'" *Commonwealth v. Hodge (No. 2),* 380 Mass. 858, 866, 406 N.E.2d 1015, 1020 (1980) (quoting trial court's jury instruction).[6]

---

5. After a careful parsing of this instruction, we understand it to say that "the fact" of a bad act implies malice when the circumstances demonstrate that the individual purposefully inflicted harm, without concern or remorse for the consequences.

6. The charge in *Hodge* also included the statement that "malice is implied from any deliberate or cruel crime against another, however sudden," 380 Mass. at 865, 406 N.E.2d at 1019. In rejecting the defendant's burden of proof argument, the SJC noted the "careful and proper words of the judge" which included those quoted above in the text, as well as the following:

"'In this respect, the Commonwealth has the burden of proving beyond a reasonable doubt that the homicide or killing did not occur in the heat of passion or of sudden provocation. . . .'"

"If you find that there is no murder, that is, the unlawful killing of a human being with malice aforethought, and that the Common-

wealth has not proven it beyond a reasonable doubt, then you must find the defendant not guilty on so much of the indictment as alleges murder.

"Insofar as the choice lies between murder and manslaughter, it is incumbent upon the Commonwealth of Massachusetts to prove to you beyond a reasonable doubt that the crime is murder. Otherwise, you are warranted only in convicting the defendant of manslaughter. In order to demonstrate that the crime of homicide of any degree has been committed, the Commonwealth must bear the burden of convincing you beyond a reasonable doubt that [the victim's] death did not result from an accident in which the defendant was free of fault, or from an act that was merely negligence or from the reasonable use of force in self-defense or defense of others." 380 Mass. at 866, 406 N.E.2d at 1020. These instructions in *Hodge* served to explain to the jurors that malice is implied *only if* the government has met its burden of disproving circum-

█ The use of the words "deliberate" or "cruel" in describing an act from which malice is implied did not alleviate the misleading impression. A willful stabbing is not inevitably committed with malice; it is the independent presence of malice that permits a voluntary stabbing to be termed murder rather than manslaughter. *See Commonwealth v. DelVerde*, 398 Mass. 288, 297 n. 5, 496 N.E.2d 1357, 1363 n. 5 (1986) ("[V]oluntary manslaughter is an intentional act mitigated by sudden passion based on provocation."); *Commonwealth v. Hebert*, 373 Mass. 535, 539, 368 N.E.2d 1204, 1207 (1977) ("[T]here may be an intent to kill even though there is no 'malice aforethought'.") Similarly, a cruel act may be defined simply as an extremely painful one, *see* Webster's Third New International Dictionary 546 (1961), and proof of a cruel act therefore does not necessarily prove the depraved state of mind that constitutes malice. Although another possible interpretation of the phrase "deliberate or cruel" would be to equate the two concepts in a manner consistent with malice,[7] the alternative phrasing of the instruction makes it at least as likely that the jury construed the words to give them their most distinct meanings.

█ The judge's earlier instructions on manslaughter and malice likewise failed to ameliorate the error in the supplemental charge.[8] As petitioner argues, the instructions stating that "[we] determine what his intent is from what he does" and "[we] judge his intent from the acts that he performs" would lend force to the jury's belief that it must find malice if it found that the petitioner did the act of stabbing, even if on their own those statements are appropriate to explain the process of determining an individual's state of mind. In addition, the first malice instruction, like the supplemental one, emphasized the breadth of the legal term "malice," but failed to describe the characteristics of the state of mind that

is legal "malice." The court neglected in this instruction, as it did in the later one, to tell the jury that malice does not exist when an intention to kill arises suddenly, from heat of blood, as in a sudden combat. This earlier instruction, then, did not dispel the notion given by the supplemental instruction that malice is associated with, and implied from, virtually any bad deed.

To be sure, the earlier instructions did not include the erroneous presumption, and there were portions that referred to circumstances in which a finding of manslaughter, rather than murder, would be warranted. The jurors were told that a malicious killing was an intentional killing "without legal justification or excuse, with no surrounding circumstances produced in the crime reducing the crime to manslaughter." The court described one specific scenario in which the jury could find manslaughter rather than murder, that of the enraged husband who finds his wife in bed with another man. The judge also stated that a voluntary killing could be manslaughter if it arises from "the violence of sudden passions occasioned by some great provocation, which in tenderness for the frailty of human nature the law considers sufficient to palliate the criminality of the offense."

None of these correct instructions, however, is inconsistent with the later charge that "malice is presumed from a deliberate or cruel act, however sudden." A jury that understood the later charge to require a finding of malice upon proof of the stabbing reasonably could have understood these earlier instructions to simply explain that that presumption could be rebutted in certain circumstances. Indeed, much of the instruction on murder and manslaughter is framed in such a way that murder is offered as the logical conclusion, with manslaughter suggested as a limited alternative possibility. *See, e.g.*, Transcript at 491

---

stances that would negate malice. The instructions at issue here lack a similar qualification, and therefore failed to dissipate the error.

7. The first meaning in Webster's links "cruel" with "sadistic" in explaining cruel as "disposed to inflict pain."

8. The relevant portions of these instructions are reproduced in the appendix to this opinion.

(referring to situation "sufficient in law to remove it from the aspect of murder," or for which "jury would be warranted in reducing the matter from murder to manslaughter").[9] The judge at no time directed the jurors to consider all the facts underlying the incident *before* drawing any conclusions about the nature of the killing. We cannot say that these instructions, taken as a whole, could not reasonably (and expectably) have been understood to direct the jury to presume murder, leaving it to petitioner Hill to prove that that inference was not warranted. *See Commonwealth v. Stillwell*, 387 Mass. 730, 733, 443 N.E.2d 1272, 1274 (1982) ("It is the 'lack of qualifying instructions as to the legal effect of the presumption,' which makes it possible for a reasonable jury to interpret the presumption as burden-shifting, and hence invalid." (quoting *Sandstrom*, 442 U.S. at 517, 99 S.Ct. at 2455)).

It is therefore at least reasonably likely that the erroneous instruction caused the jurors, at a minimum, to shift the burden of proof to petitioner in this manner. It also is reasonably likely that the jurors interpreted the "malice is implied" charge as establishing a conclusive presumption, rather than merely a burden-shifting one. The offensive language appeared not as part of the original charge, but in a supplemental instruction specifically sought by the jurors to explain the difference between murder and manslaughter. The earlier instructions evidently left the jurors troubled about the distinction between the two crimes, and we therefore think it likely that the jurors focused primarily, if not solely, on the supplemental charge in making their judgment. None of the court's language in that charge would rebut an interpretation of the final sentence as establishing a conclusive presumption.

We think it worth repeating language from the SJC that we previously have endorsed in rejecting a defendant's claim that the jury charge at his trial shifted to him the burden of disproving malice:

"A judge does not violate constitutional principles of due process by advising the jury that, *if they think it reasonable*, they *may* infer the existence of malice from the fact, proved beyond a reasonable doubt, that a defendant shot the victim, stabbed him, or otherwise harmed him with a deadly weapon."

*McInerney*, 621 F.2d at 24 (quoting *Gagne v. Commonwealth*, 375 Mass. 417, 422–23, 377 N.E.2d 919, 923 (1978)) (emphasis added). In this case, however, the court did not qualify its instructions with permissive language or describe the reasoning process the jurors should use to reach their conclusion regarding malice. As a result, the risk of an unconstitutional application of the faulty charge was great.

C.

It is now clear that a *Sandstrom* error is subject to the harmless error rule. *See Sandstrom*, 442 U.S. at 526–27, 99 S.Ct. at 2460–61; *Rose v. Clark*, 478 U.S. 570, 580–82, 106 S.Ct. 3101, 3107–08, 92 L.Ed.2d 460 (1986); *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 2420–21, 105 L.Ed.2d 218 (1989) (per curiam). But the Supreme Court has not yet spoken explicitly on whether the analysis applicable in a *Sandstrom* case differs from the typical harmless error review. *See Carella*, 109 S.Ct. at 2421 (Scalia, J., concurring).[10]

It does not matter for this case what analysis ultimately will be deemed appropriate, however, because under either of the two apparent alternatives we do not feel able to assert with any confidence that the error was harmless. The traditional standard requires consideration of "the trial record as a whole," *United States v. Hasting*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983), to ascertain whether the crucial fact (malice), wrongly said to be determined by a second fact

---

**9.** This approach, of course, is consistent with the *Webster* case, from which the trial judge drew most of the manslaughter instructions. *See supra* at 649–650.

**10.** On October 1, 1990, the Supreme Court granted certiorari in a case presenting this question. *See Yates v. Aiken*, 391 S.E.2d 530 (S.C. 1989), *cert. granted sub nom. Yates v. Evatt*, —— U.S. ——, 111 S.Ct. 41, 112 L.Ed.2d 18 (1990).

(cruel act), was nevertheless overwhelmingly established by other evidence so that it is clear beyond a reasonable doubt that the jury would have found petitioner guilty of second-degree murder, *id.* at 511, 103 S.Ct. at 1981. In this case, after reading all of the relevant trial transcript, we cannot so proclaim. The sudden nature of the confrontation, the youth of petitioner, the ongoing struggle and his attempts to free himself from the victim's grasp are all factors consistent with an absence of malice. *See also infra* at 656–657 (discussing other facts negating harmlessness). Although a properly instructed jury unquestionably could have found Hill guilty of second-degree murder on this record, it is not a record on which we can say that the erroneous presumption was harmless beyond a reasonable doubt.

The same result obtains if we employ the narrower harmless error inquiry that Justice Scalia and three other justices describe in their concurring opinion in *Carella,* 109 S.Ct. at 2421. A narrowing of focus is required when a *Sandstrom* error is subjected to harmless-error review, the opinion explained, in order to preserve the factfinding function that the law assigns solely to a jury in a criminal case.

> "To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made."

109 S.Ct. at 2423 (quoting *Connecticut v. Johnson,* 460 U.S. 73, 86, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (plurality opinion)).

Thus, according to Justice Scalia, "the use of conclusive presumptions could be harmless error only in those 'rare situations' when 'the reviewing court can be confident that [such an] error did not play any role in the jury's verdict.'" *Carella,*

109 S.Ct. at 2423 (quoting *Johnson,* 460 U.S. at 87, 103 S.Ct. at 977). Those "rare situations" would include those when the instruction established a conclusive presumption on a charge of which the defendant was acquitted (and not affecting other charges), when the instruction established a conclusive presumption with respect to an uncontested element of the crime, and "[w]hen the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact," *id.*

Whether or not a majority of the Court ultimately adopts it, this narrow approach to harmless error review, specifically tailored for *Sandstrom* cases, presently remains a cogent alternative to the traditional analysis. *See Carella,* 109 S.Ct. at 2422 ("'[T]he question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials.'" (quoting *Bollenbach v. United States,* 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L.Ed. 350 (1946))). We therefore now apply that approach to this case.[11]

The government argues that the challenged instruction here, if it amounted to constitutional error, was harmless because petitioner Hill never raised the issue of malice at trial, and the issue therefore was uncontested. Hill's defense focused on the question of identity, and he denied throughout the trial that he was the person who did the stabbing. Both the district court and the SJC noted that "the issue of malice was not in dispute," *Hill,* 387 Mass. at 624, 442 N.E.2d 24; District Court Opinion at 7.

Although Hill did not focus on malice at his trial, we think it incorrect to conclude that that issue was not in dispute. The record reveals no admission by Hill that whoever did the stabbing did so with malice; indeed, in his closing argument, Hill's

---

**11.** Justice Scalia emphasized that the narrower harmless error review was particularly appropriate when the erroneous instruction created a *conclusive* presumption, as distinguished from a rebuttable presumption. 109 S.Ct. at 2424. In this case, we have determined that it was reasonably likely that the jury would have viewed the presumption as conclusive, and the narrower mode of analysis therefore has special appeal.

lawyer urged the jurors to consider the intent of the boys when they encountered Murphy, and observed that when a fourteen-year-old boy is with a group that starts fighting, "[y]ou do it without thinking, you become involved, you jump in to help out." *See* Transcript at 454. The attempt to persuade the jury that someone else was responsible for the crime is not inconsistent with the theory that the killing in any event constituted manslaughter and not murder. We do not believe that a defendant is required to argue explicitly that, if the jury rejects his identity defense, it should find him guilty only of the lesser of the crimes charged. A defendant reasonably may wish to avoid such an argument for fear the jury would view the offer of an option as an admission that his primary defense is weak. No matter what the theory of the defense, the burden remains on the government to prove every element of a crime beyond a reasonable doubt, and the defendant is under no obligation to remind the jury of the necessary elements.

There may be cases in which it would be appropriate to find that a defendant's failure to argue explicitly about malice or intent is equivalent to a concession on those issues. In *Ross v. Israel,* 503 F.Supp. 131 (E.D.Wis.1980), for example, a case urged on us by the Commonwealth, two masked intruders robbed a grocery store at gunpoint, and one of the men fired twice at the proprietor, fatally shooting him in the head with the second shot. At trial, the only contested issue was whether in fact the defendant was the gunman who killed the store owner. The court noted that "the gunman's intent was never put in issue, and, indeed, could hardly have been contested," 503 F.Supp. at 133. Because the challenged instruction on intent "could not in any way have influenced a reasonable juror in deciding the issue of identification," *id.* at 134, the court concluded that the burden-shifting instruction constituted no more than harmless error. A similar case cited by the *Ross* court was *United States v. Reeves,* 594 F.2d 536 (6th Cir. 1979). The *Reeves* court termed an erroneous instruction on intent harmless because

"the criminal intent of the person who robbed this bank was never placed at issue ...," *id.* at 538. "The sole jury issue was whether or not appellant was the robber ...," *id.* at 541. *See also United States v. Winter,* 663 F.2d 1120, 1144–45 (1st Cir. 1981); *Krzeminski v. Perini,* 614 F.2d 121, 125 (6th Cir.1980).

*Ross* and *Reeves* are significantly different from the instant case because of the factual circumstances underlying the crimes charged. Both of those cases involved obviously premeditated decisions to commit crimes and, in *Ross,* a fatal shooting while the defendant was moving toward the door to flee. Neither of these cases is easily susceptible to a conclusion that the defendant took his action without criminal intent. In this case, however, the circumstances surrounding Murphy's fatal stabbing permit a viable claim for manslaughter rather than murder. The confrontation was spontaneous and Hill was struggling to free himself from Murphy's grasp. The failure to argue the issue of malice in these circumstances cannot reasonably be viewed as a concession on that issue. Accordingly, we reject the government's argument that the error here was harmless because malice was undisputed at trial. Indeed, another case brought to our attention by the government reinforces our view. In *Patterson v. Austin,* 728 F.2d 1389, 1395–96 (11th Cir.1984), the court held that the defendant did not concede intent to kill by claiming self-defense.

We find no other ground on which to base a conclusion of harmless error. Our discussion in the previous paragraph, as well as our discussion *supra* at page 652, demonstrate that this is not a case in which a finding of the underlying facts—that Hill did the fatal stabbing—is "so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact," *Carella,* 109 S.Ct. at 2423 (Scalia, J., concurring). The government argues that the deadly location of the stab wounds—in the heart and stomach—proved Hill's malicious intent and foreclosed a finding of manslaughter. It is certainly true that this evidence

was relevant to the jury's deliberations, but it is far from conclusive. Moreover, the jurors' request for a supplemental instruction on second degree murder and manslaughter suggests that they were unsure about the severity of the crime. *See Franklin,* 471 U.S. at 326, 105 S.Ct. at 1977 ("The jury's request for reinstruction on the elements of malice and accident ... lends further substance to the court's conclusion that the evidence of intent was far from overwhelming in this case.")

We think it worth noting, for contrast, a recent case in which we found that an erroneous malice instruction played no role in the jury's decisionmaking. In *Doucette v. Vose,* 842 F.2d 538 (1st Cir.1988), the court instructed the jury that a presumption of malice arises when a killing is caused by the intentional use of a deadly weapon. The jury in *Doucette,* however, found the defendant guilty of *first degree* murder. We explored at length the reasoning the jury must have used to reach that result, noting that "a jury that finds a killing deliberately premeditated (under proper 'deliberate premeditation' instructions) is not a jury that could find manslaughter, regardless of what it thought about 'malice,' " *id.* at 542. Thus, there was "virtually no likelihood" that the malice instruction could have made a difference in the jury's deliberations, *id.* at 543. *But see Stillwell,* 387 Mass. at 733–34, 443 N.E.2d at 1274 (reversing first-degree murder conviction because of faulty malice instruction). Just the opposite conclusion must be drawn in this case, where the jury apparently rejected first degree murder early on, and then received faulty advice about how to choose between second degree murder and manslaughter. Moreover, it is not insignificant that, in addition to setting up the presumption of malice, the court neglected to inform the jury that Massachusetts law deems a killing that stems from "a sudden combat" to be manslaughter. In these circumstances, we are unable to say that the error was "harmless beyond a reasonable doubt," *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

*Accordingly, the judgment of the district court is vacated, and the cause remanded to that court with directions to issue the writ of habeas corpus unless, within 90 days from the date of this judgment, the Commonwealth has instituted proceedings to retry petitioner or has petitioned the United States Supreme Court for a writ of certiorari. If the Commonwealth seeks a writ of certiorari, issuance of the writ of habeas corpus shall be stayed pending further order of the Supreme Court. If certiorari is sought and denied, the district court is directed to issue the writ of habeas corpus unless, within 30 days from the date of such denial, the Commonwealth has instituted proceedings to retry petitioner.*

## APPENDIX

I'm going to talk to you about some words now that have different meanings, usages, in the law than they have in the common ordinary use of English in anything about a court of law. One is malice. Malice is a technical expression that is used in our law. The word "malice" as used in that expression does not necessarily imply ill will. Now, when we use malice ordinarily, it means that the person who has malice in his heart has ill will toward another whom he knows, and perhaps has some reason for having that ill will. That's not what it means in the law.

It may mean that, but it doesn't necessarily imply ill will, hatred, or the seeking of revenge against another, or any other sinister motive or feeling. Any intentional killing of a human being without legal justification or excuse, with no surrounding circumstances produced in the crime reducing the crime to manslaughter, is malicious within the meaning of the expression malice aforethought. I'll come to that expression in a moment, but now I tell you about the word "malice."

I'm going to talk to you necessarily about the word "intent," because people in criminal law are punished for what they intend ordinarily. Well, one person

doesn't know what another person has in his mind, and intent is a state of mind. So you don't know what I'm thinking, and I don't know what you are thinking. We don't know what another person intends. How then do we determine what a person intends? Very simple. We determine what his intent is from what he does. If he is the same [sic] person, we judge his intent from the acts that he performs.

.    .    .    .    .

Now, I've read to you the indictment in this case, which charges murder in the first degree, and the statute that has to do with murder in the first degree in Massachusetts reads as follows.... "Murder committed with deliberate premeditated malice aforethought," and then I'm going to skip some other things that don't apply, could not apply to this case, "Murder committed with deliberately premeditated malice aforethought is murder in the first degree. Murder which does not appear to be in the first degree is murder in the second degree. The degree of murder shall be found by the jury."

.    .    .    .    .

Now, if that was all there was to it, it wouldn't be perhaps so difficult, but there is another type of homicide which is called "manslaughter," and which is a lesser included crime under a murder indictment. So what is the difference between murder one, murder two, and manslaughter? Manslaughter is the unlawful killing of another, but not one that is malicious. There need be no proof of malice in a manslaughter case.

Let me go over it again very briefly with you. Murder one, deliberately premeditated malice aforethought, although the word "deliberate" doesn't have reference so much as to time as to the purposeful character of the premeditated malice; refers to that rather than the time spent. Second degree, malicious killing but one that is not deliberately premeditated, and manslaughter, one that is homicide committed but when malice has not been proved.

There are cases, and I give an example that perhaps will help you, of manslaughter that would be sufficient in law to remove it from the aspect of murder. Suppose a man found his wife being intimate with another man, and became so enraged and so passionate because of that fact that a homicide resulted. Well, because of the type of people that people are, and excuses that may be given to someone because of the extreme situation that existed in an example such as I gave you, the jury would be warranted in reducing the matter from murder to manslaughter.

.    .    .    .    .

Manslaughter is the unlawful killing of another without malice, as I have said to you, and may be voluntary as when the act is committed with a real design and purpose to kill, or to inflict grievous bodily harm which ultimately results in death, but through the violence of sudden passions occasioned by some great provocation, which in tenderness for the frailty of human nature the law considers sufficient to palliate the criminality of the offense.

Now words are not enough. However obscene or offensive they may be, words are not enough to permit a man to assault another to kill him, and then to have that crime reduced to manslaughter from what otherwise might be murder. It's a situation which, as the Court has said because of sudden passion occasioned by some great provocation which might reduce a crime, where the other element of proof, from murder to manslaughter [sic].

Transcript, at 486–494.